STATE OF NORTH CAROLINA v. CARLTON EUGENE ANDERSON

No. 129A96

(Filed 9 May 1997)

### Homicide § 261.1 (NCI4th)— first-degree murder by torture— sufficiency of evidence

The State's evidence was sufficient to show that defendant's actions of torture of the victim were part of a course of conduct that resulted in the victim's death so as to support defendant's conviction of first-degree murder by torture where it tended to show that a group of persons living in a trailer began to beat and torture the victim; after defendant arrived at the trailer several days later, he beat the victim, used a soldering iron on the victim's arm in an attempt to burn off a tattoo, used an aerosol torch on

the victim's genital area, carved a derogatory term on the victim's arm with a knife, and otherwise participated in the torture of the victim; defendant and members of the group living in the trailer discussed possible ways to kill the victim; and after defendant left the trailer, the torture continued for a few more days until the victim ultimately died after being bound, gagged, and locked in a closet while the others went out for pizza.

**Am Jur 2d, Homicide § 48.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Hyatt, J., at the 21 August 1995 Criminal Session of Superior Court, Jackson County, upon a verdict of guilty of first-degree murder. Heard in the Supreme Court 19 March 1997.

The defendant was indicted for first-degree murder and was tried noncapitally to a jury. The State's evidence tended to show that in March of 1994, Vickie Fox, Thomas York, Michelle Vinson, Mike Hagedorn, Robert Trantham, and the victim lived together in Vickie's trailer. On or about 17 or 18 March 1994, the group turned against the victim, who had allegedly molested Vickie's daughter and given Michelle's son a soapy bottle. The group beat and kicked the victim, cut his hair to his scalp, and otherwise physically degraded the victim.

On 20 March 1994, Thomas, Robert, Mike, and Michelle went to a game room in Sylva to get the defendant, who had lived with the group in the past and was familiar with them. When the defendant arrived at the trailer, the victim had his head wrapped in a towel, and his face was black and blue. After Vickie told the defendant what had happened, the defendant asked the victim why he had done what he did. The defendant, Robert, and Thomas then began beating the victim in the face and chest. Vickie later noticed that her name was tattooed on the victim's arm and said she wanted it removed. After unsuccessful attempts to scrape the tattoo off with a knife, the defendant used a heated soldering iron to burn off the tattoo. Later, the defendant and Thomas used a knife to carve "fag" on the victim's arm. The victim was also made to ingest his own urine and ejaculate and was forced to sleep in the bathroom.

The defendant spent the night at the trailer, and he and the others discussed killing the victim. The next day, the defendant used an "aerosol torch" to burn the victim's upper leg and genital area. The

defendant left the trailer at approximately 4:00 or 4:30 that afternoon and did not return. The others continued to beat the victim for a few days. The beatings stopped for two days so that the victim's face could heal enough to allow him to cash his unemployment check. The victim died on 26 March 1994, after having been bound, gagged, and locked in a small closet while the group used the money from the victim's check to purchase pizza. The group discovered that the victim was dead when they returned from their outing. The following morning, the entire group drove the victim's body to Toccoa, Georgia, and dumped his body in the woods. Robert Trantham led police to the body.

A forensic pathologist testified that the cause of the victim's death was gagging and positional asphyxia as a result of being placed in a position in which "the mechanics of his breathing would have been interfered with." The pathologist also testified that pneumonia in the victim's left lung could have contributed to his death.

The jury found the defendant guilty of first-degree murder on the basis of murder by torture, assault with a deadly weapon inflicting serious injury, and misdemeanor assault inflicting serious injury. The trial judge sentenced the defendant to the mandatory term of life imprisonment for the murder conviction and arrested judgment on the assault convictions.

The defendant appealed.

*Michael F. Easley, Attorney General, by Melanie L. Vtipil, Associate Attorney General, for the State.*

*Frank G. Queen for the defendant-appellant.*

WEBB, Justice.

The defendant contends that the evidence in this case was insufficient to submit to the jury the charge of first-degree murder on the basis of murder by torture. He argues that because he left the residence several days before the victim died, there is no causal link between his actions and the death of the victim. He also argues that the victim died from an intervening cause of death when the others involved bound and gagged him and confined him in the closet. This assignment of error has no merit.

The elements of the offense of murder by torture are that the defendant intentionally tortured the victim and that the torture was a

proximate cause of the victim's death. *State v. Crawford*, 329 N.C. 466, 479, 406 S.E.2d 579, 587 (1991). The trial judge in *Crawford* defined torture as "the course of conduct by one or more persons which intentionally inflicts grievous pain and suffering upon another for the purpose of punishment, persuasion, or sadistic pleasure." *Id.* at 484, 406 S.E.2d at 589. He defined course of conduct as "the pattern of the same or similar acts, repeated over a period of time, however short, which established that there existed in the mind of the defendant a plan, scheme, system or design to inflict cruel suffering upon another." *Id.* This Court found no error. *Id.* Where a murder is accomplished by torture, "the presence or absence of premeditation, deliberation and specific intent to kill is irrelevant." *State v. Evangelista*, 319 N.C. 152, 158, 353 S.E.2d 375, 380 (1987). In determining whether there was sufficient evidence to support the charge of first-degree murder by torture, we must view the evidence in the light most favorable to the State and with all reasonable inferences to be drawn from the evidence. *State v. Scott*, 323 N.C. 350, 372 S.E.2d 572 (1988).

The defendant contends that the victim died as the result of being locked in the closet and that the defendant had not been in the trailer for six days when this happened. For that reason, the defendant says, he is not responsible for the killing. We disagree. It is true that the immediate cause of death came as a result of being locked in the closet, but that was part of the torture in which the defendant actively participated.

The evidence in this case showed that during the time the defendant was at the trailer, he beat the victim, used a soldering iron on the victim's arm, used an aerosol torch on the victim's genital area, carved a derogatory term into the victim's arm, and otherwise participated in the torture of the victim that had begun a few days before the defendant arrived. The group, including the defendant, also discussed possible ways to kill the victim. After the defendant left the trailer, the torture continued for a few more days until the victim ultimately died after being bound, gagged, and locked in a closet while the others went out for pizza. The defendant's actions were thus part of a course of conduct that resulted in the victim's death. As such, it was not error for the court to submit torture as the theory supporting the defendant's first-degree murder charge.

NO ERROR.