STATE OF NORTH CAROLINA v. JAMES CLAYTON CORBETT

No. COA02-35

(Filed 17 December 2002)

**1. Sexual Offenses— constructive force—parental relationship**

There was sufficient evidence of constructive force in a second-degree sexual offense conviction where the victim was defendant's step-daughter; the abuse in question began when she was twelve and continued until she was sixteen; and the victim testified that defendant acted like her father, disciplined her, and that she treated him as her father. Constructive force may be inferred from the circumstances surrounding the parental relationship.

**2. Sexual Offenses— prosecutor's argument—constructive force**

In light of the evidence, there was no reasonable possibility of a different result in a second-degree sexual offense prosecution without the prosecutor's closing argument that it was force if the defendant just said "I'm your daddy."

**3. Sentencing— aggravating factors—abuse of trust—used to prove element of sexual offense**

The trial court erred in a second-degree sexual offense prosecution by finding as an aggravating factor that defendant took advantage of a position of trust after the State used the same evi-

dence (circumstances surrounding the parental relationship) to prove the element of force.

Appeal by defendant from judgment entered 22 March 2001 by Judge Paul L. Jones in Wayne County Superior Court. Heard in the Court of Appeals 10 October 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Sarah Ann Lannom, for the State.*

*Barnes, Braswell & Haithcock, P.A., by Glenn A. Barfield, for defendant-appellant.*

CAMPBELL, Judge.

Defendant was convicted by a jury of second degree sexual offense and five other charges on 22 March 2001. Regarding the second degree sexual offense conviction the court found as an aggravating factor that defendant "took advantage of a position of trust" and as mitigating factors that "the defendant has been a person of good character or has a good reputation in the community in which the defendant lives," and "the defendant supports the defendant's family, the defendant has a support system in the community, he has a positive employment history." The court found that the "factors in aggravation outweigh the factors in mitigation" and sentenced defendant to thirty years. The remaining convictions are not appealed.

The conviction for second degree sexual offense was for offenses against defendant's stepdaughter, Jodi Coor West ("Jodi"), from on or about 12 December 1983, when Jodi was twelve, up to and including 11 December 1987, just before Jodi turned sixteen. The evidence tended to show that Jodi was born 12 December 1971 and lived with defendant from the age of five or six until she was twenty-four.

Jodi testified defendant "would come into my bedroom and he would get in the bed and he would begin fondling me. . . . [H]e inserted his fingers into my vagina with penetration." He would fondle her bare breast and the penetration "was very uncomfortable." Jodi testified that she didn't know it was wrong, just "knew it was uncomfortable, but I mean I was only a young child and he was supposed to be my father figure." Jodi further testified defendant "said let's kiss like boyfriend and girlfriend" and "would insert his tongue into my mouth." Jodi explained that defendant also would fondle her breasts, "I'd be washing dishes or vacuuming or doing different things

and he'd come up behind me, run his hand up my shirt with or without a bra on, and if I had a bra on he'd push it up. . . . It seemed like an eternity but I'm sure it was just several minutes and he would kiss on my neck." Jodi elaborated that the fondling "was a lot more common occurrence than the penetration. He would get us[1]—get me on the couch or if I'd be sitting there he'd come up and sit beside me and do that also." Other than the penetration, Jodi testified defendant also would pinch at her vagina through her clothes.

During this time, Jodi testified, defendant acted as a father, and she treated him as such. When asked why she didn't know it was wrong, Jodi explained "I knew—I felt that it was wrong, but whenever he tells you that it's okay because he is your father figure and you're only a young child, I mean, what are you supposed to believe?"

Corroborating Jodi's testimony was the testimony of Sergeant Ronald Baker of the Wayne County Sheriff's Department, Jodi's husband, great-uncle, great-aunt, and sister, all of whom testified regarding prior consistent statements Jodi made detailing the abuse. Defendant testified that he never sexually abused Jodi. Three people testified to defendant's good character.

Defendant asserts the trial court erred by: (I) failing to dismiss for insufficient evidence charge one, of second degree forcible sexual offense; (II) overruling defendant's objection to the State's closing argument; (III) finding as an aggravating factor that defendant "took advantage of a position of trust."

## I. Motion to Dismiss Charge One

[1] To review a motion to dismiss for insufficient evidence, this Court asks "whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996). "Substantial evidence is that which a reasonable juror would consider sufficient to support a conclusion that each essential element of the crime exists." *State v. Baldwin*, 141 N.C. App. 596, 604, 540 S.E.2d 815, 821 (2000). "In reviewing challenges to the sufficiency of evidence, the evidence must be viewed in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *State v. Payne*, 149 N.C. App. 421, 424, 561 S.E.2d 507, 509 (2002).

---

1. Paula Corbett, defendant's biological daughter, was also a victim of defendant's abuse. For abuse of Paula, defendant was found guilty of indecent liberties with a child.

The crime charged was second degree sexual offense. "A person is guilty of a sexual offense in the second degree if the person engages in a sexual act with another person: (1) [b]y force and against the will of the other person. . . . Any person who commits the offense defined in this section is guilty of a Class C felony." N.C. Gen. Stat. § 14-27.5 (2001). "Sexual act means . . . the penetration, however slight, by any object into the genital . . . opening of another person's body." N.C. Gen. Stat. § 14-27.1(4) (2001).

Defendant asserts the State failed to prove the element of force. "The requisite force may be established either by actual, physical force or by constructive force in the form of fear, fright, or coercion." *State v. Etheridge*, 319 N.C. 34, 45, 352 S.E.2d 673, 680 (1987). Usually, "[c]onstructive force is demonstrated by proof of threats or other actions by the defendant which compel the victim's submission to sexual acts." *Id.* The "[t]hreats need not be explicit so long as the totality of circumstances allows a reasonable inference that such compulsion was the unspoken purpose of the threat." *Id.*

In the case of a parent-child relationship, however, "constructive force [may] be reasonably inferred from the circumstances surrounding the parent-child relationship." *Id.*, 319 N.C. at 47, 352 S.E.2d at 681. "The youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose." *Id.* "As one commentator observes, force can be understood in some contexts as the power one need not use. Estrich, *Rape*, 95 Yale L.J. 1087, 1115 (1986). In such cases the parent wields authority as another assailant might wield a weapon. The authority itself intimidates; the implicit threat to exercise it coerces." *Id.*, 319 N.C. at 48, 352 S.E.2d at 682.

In *Etheridge* the element of force was implied from the circumstances surrounding the parent-child relationship, including: the fact that the victim was only eight years old when the abuse began, which "conditioned [the victim] to succumb to defendant's illicit advances at an age when he could not yet fully comprehend the implications of defendant's conduct;" and "[t]he [fact that the] incidents of abuse all occurred while the boy lived as an unemancipated minor in defendant's household, subject to defendant's parental authority and threats of disciplinary action." *Id.*, 319 N.C. at 47-48, 352 S.E.2d at 681. In *State v. Hardy*, 104 N.C. App. 226, 232, 409 S.E.2d 96, 99 (1991), the

Court found constructive force was inferred from the circumstances surrounding the parental relationship, including: "[t]he defendant, the victim's step-father, began abusing the victim when she was only fifteen years old. Each episode of abuse occurred while the victim lived with the defendant as an unemancipated minor in the defendant's trailer and subject to his parental authority."

We now consider whether circumstances similar to *Etheridge* and *Hardy* are present in the case at bar. The abuse began when Jodi was approximately twelve years old. She testified, "I knew it was uncomfortable, but I mean I was only a young child" and "I felt that it was wrong, but whenever he tells you that it's okay because he is your father figure and you're only a young child, I mean, what are you supposed to believe?" Jodi further testified that defendant acted like her father, disciplined her, and that she treated him as her father. During the dates in question, Jodi was ages twelve through sixteen and was not emancipated and was subject to defendant's parental authority. From the circumstances of the parental relationship, we find there is sufficient evidence from which a reasonable jury could conclude defendant used his position of power to force his stepdaughter to engage in sexual acts.

## II. Defendant's objection to the State's closing argument

**[2]** Defendant asserts the trial court erred in overruling his objection to the State's closing argument in which the prosecutor said "[i]f [the defendant] just says 'I'm your daddy' that is force." Without determining whether this statement was error, in light of the evidence discussed in section (I), we do not find a reasonable possibility exists that had this statement not been made a different result would have been reached by the jury. Therefore even assuming arguendo that there was error it was not prejudicial error.

## III. The aggravating factor

**[3]** Defendant asserts the trial court erred in finding as an aggravating factor that defendant "took advantage of a position of trust." N.C. Gen. Stat. § 15A-1340.16(d)(15) (2001). "Evidence necessary to prove an element of the offense shall not be used to prove any factor in aggravation." N.C. Gen. Stat. § 15A-1340.16(d) (2001). To prove the element of force, as discussed in section (I), the State used the evidence of the circumstances surrounding the parental relationship. This evidence is the same evidence used to prove that "defendant took advantage of a position of trust." Therefore, the trial court erred

in finding this aggravating factor and defendant must be re-sentenced without consideration of this element as an aggravating factor.

Affirmed in part, reversed in part, remanded for re-sentencing.

Judges TIMMONS-GOODSON and HUDSON concur.